# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of:

6 electronic devices, currently located at the FBI Milwaukee
Field Office, 3600 S Lake Drive St. Francis, WI 53235, as
further described in Attachment A

)
)
)
)
)
)

Case No. 17M090

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Sections 1951 and 2, Title 18, United States Code, Sections 2119(1) and 2, Title 18, United States Code, Sections 924(c) and 2

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Erin Lucker, FBI
_____
Printed Name and Title

Sworn to before me and signed in my presence:

Date: _____ June 21, 2017

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Honorable David E. Jones_____, U.S. Magistrate Judge
Printed Name and Title

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Erin Lucker, being first duly sworn on oath, on information and belief state:

## I.     BACKGROUND, TRAINING, AND EXPERIENCE:

1.     I have been a Special Agent of the FBI since November 2016.  I am currently assigned to the Milwaukee Office of the FBI. During my career in law enforcement, I have participated in violent crime investigations.  I am currently assigned to the FBI Milwaukee Violent Crimes Task Force which involves investigations of violent crimes, to include kidnappings, extortions, murder for hire, bank and armored car robberies.

2.     Based on my training and experience, I believe there is probable cause that DOMINIQUE A. ROLLINS (DOB XX/XX/1992), OTIS HUNTER (DOB XX/XX/1993), KELLY SCOTT (DOB XX/XX/1968), DESHAWN EVANS (DOB XX/XX/1996), ANTHONY LINDSEY (DOB XX/XX/1998), and D.H. (DOB XX/XX/2001), a juvenile, engaged in the robbery of Roman's Food Market in Milwaukee, Wisconsin, on November 17, 2016; the carjacking near Mount Sinai Hospital in Milwaukee, Wisconsin on November 20, 2016; the robbery of George Webb Restaurant in Milwaukee, Wisconsin, on November 22, 2016; and the carjacking near 1418 West Greenfield Avenue, Milwaukee, Wisconsin, on December 4, 2016. These offenses are in violation of Title 18, United States Code, Sections 1951 and 2 (Hobbs Act Robbery), Title 18, United States Code, Sections 2119(1) and 2 (Motor Vehicle Robbery), and use of a firearm during a crime of violence, in violation of Title 18, United States Code, Sections 924(c) and 2.

3.     This affidavit is based upon my personal knowledge and information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  This affidavit is based upon information

provided by other law enforcement officers' police reports, citizen witnesses' statements, surveillance footage, business records, post-arrest statements, and other information whose reliability is established separately herein.

4. This affidavit is submitted in support of an application for search warrants for the following portable electronic devices ("Devices"), which are currently in custody at the Federal Bureau of Investigation, Milwaukee Field Office, for evidence of the aforementioned crimes:

a. A black Verizon Samsung flip-phone, Model SM-B311V, MEID A0000047635C09;

b. A black, Verizon Samsung Galaxy S5, IMEI 990004809792165;

c. A white, Samsung touch-screen, Model SM-G360T, S/N R28G72GLC2L;

d. A white, Samsung touch-screen, Model LS740P, S/N 412CYAS0160768;

e. A black, TracFone Wireless Alcatel, S/N 014404005069925; and

f. A white Acer laptop, S/N NXMUNAA01653917CFF7600.

5. Because this affidavit is submitted for the limited purpose of obtaining search warrants, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the requested warrants.

## II. PROBABLE CAUSE

6. On November 17, 2016, at approximately 2:44 p.m., two black male subjects robbed Roman's Food Market, located at 2441 South 18th Street, Milwaukee, Wisconsin. The robbery discussed herein affected interstate commerce. The subjects entered Roman's Food Market at approximately 2:44 p.m. Subject 1 pointed a black semi-automatic handgun at Victim 1 and said, "This is a hold up." Subject 2 entered the store and told Victim 1, "He told you it's a robbery." Subject 2 ordered Victim 1 to the ground in a face down prone position and searched Victim 1's

2

pockets. Subject 1 pointed the handgun at Victim 2 and ordered Victim 2 to open the register. Subject 2 said, "There's a little girl coming to the store. Let's go, hurry up." Subject 2 left the store for a few seconds and came back inside. The subjects took the cash register drawer, a change bucket, and other items, such as cigarettes and personal items from the victims. The subjects exited through the front door of the store. Victim 2 observed a late 1990s gold or tan Chevrolet Impala without license plates traveling westbound on Kearney Place immediately after the robbery.

7.     A review of the store surveillance video footage shows the activity described above. Subject 1 wore a white t-shirt, a blue and white knit winter hat, a blue and white bandana over the bottom of his face, black pants, and a watch on his left wrist. Subject 1 carried a black bag and brandished a black semi-automatic handgun with a silver ejection port in his right hand. Subject 2 wore a grey and blue checkered long sleeve shirt with a black hood, a green shirt underneath the long sleeve shirt, light colored work gloves, dark pants, and black shoes with white soles.

8.     The surveillance footage also shows Subject 2 putting on a pair of light-colored gloves as he entered the store. Subject 1 ordered Victim 2 to open the register while Subject 1 had a gun to the back of Victim 2's neck. Subject 1 ordered Victim 2 to the ground. Subject 2 reached into the register and took out money. The subjects fled the store and entered a gold Chevrolet Impala without license plates and missing the front passenger side hub cap. Subject 1 entered the rear passenger-side door, and Subject 2 entered the front passenger door. A third subject drove the Impala westbound on Kearney Place.

9.     On November 29, 2016, Milwaukee Police Department Officers Richard Litwin and Steven Strasser observed a 2003 tan Chevrolet Impala consistent with the Impala observed in the surveillance video from the above-described Roman's Food robbery. The Impala was parked near the 3800 block of West Center Street, and was missing license plates and the front passenger side

3

hub cap. The Vehicle Identification Number ("VIN") on the Impala was determined to be 2G1WF52E339245246. A search of the Milwaukee Police Department database showed that an officer stopped the same vehicle on October 28, 2016, and issued the driver, DOMINIQUE A. ROLLINS (DOB XX/XX/1992), a citation.

10.     During a photo line-up on December 1, 2016, Victim 1 of the Roman's Food robbery identified ROLLINS as the subject wearing gloves who ordered the victim to the ground (Subject 2). Further, a comparison of a photograph of ROLLINS and Subject 2 shows them to be the same person.

11.     On December 1, 2016, at approximately 10:10 a.m., Milwaukee County District Attorney Investigator Aaron Weiss located the Chevrolet Impala occupied at 3400 West Wells Street, in Milwaukee, Wisconsin. The driver of the Impala was identified as DOMINIQUE A. ROLLINS (DOB XX/XX/1992). ROLLINS was arrested pursuant to municipal warrants with the Milwaukee Police Department.

12.     On December 1, 2016, Milwaukee Police Department Detective Ryan Bergemann interviewed ROLLINS. ROLLINS admitted his involvement in the Roman's Food Market robbery on November 17, 2016. He further stated that he committed the robbery with "O" and "Pops." Through photographs and other subject interviews, OTIS HUNTER (DOB XX/XX/1993) was identified as "O"; and KELLY SCOTT (DOB XX/XX/1968) was identified as "Pops." SCOTT drove ROLLINS's Chevrolet Impala to Roman's Food Market. ROLLINS was in the front passenger seat and HUNTER was in the back seat. While ROLLINS and HUNTER were in Roman's Food Market, HUNTER brandished a handgun and pointed it at the victim. ROLLINS believed the handgun was a Baby Desert Eagle.

4

13.    I have independently reviewed photographs of Baby Desert Eagle handguns and they appear consistent with the firearm brandished during the Roman's Food Market robbery.

14.    According to ROLLINS, after HUNTER pointed the handgun at the victim, HUNTER told ROLLINS to start grabbing items. ROLLINS grabbed items and put them into his pocket. ROLLINS took money out of the register drawer once it was put on the counter. At one point during the robbery, a young girl tried to enter the store while ROLLINS and HUNTER were committing the robbery, but ran away when she saw what was happening. ROLLINS and HUNTER finished taking the money from the register and other items, and fled out the same door they entered. ROLLINS entered the front passenger seat of the Impala and HUNTER entered the rear passenger side door. SCOTT drove the Impala once ROLLINS and HUNTER returned to the vehicle.

15.    ROLLINS stated that after the robbery, they drove to the Pick 'n Save located near North 35th Street and West North Avenue and split the money obtained from the robbery. HUNTER gave a small amount of his money to SCOTT for driving during the robbery. ROLLINS did not remember how much money he received from the robbery, but he stated that he spent the money on gas for his vehicle and marijuana.

16.    On November 22, 2016, three subjects entered the George Webb Restaurant located at 2028 West Mitchell Street, Milwaukee, Wisconsin, through the side door of the restaurant. The three men robbed the restaurant employees at gunpoint. Surveillance video from inside the restaurant was obtained and reviewed. In the surveillance footage, Subject 1 was identified as a black male, 20 to 30 years old, 5'08" to 5'09", 120 to 140 pounds, wearing a nylon stocking over his head, red hooded sweatshirt, dark pants, and red tennis shoes with red soles. Subject 1 was armed with a long barrel revolver with white handle. Subject 2 was identified as a black male, 20 to 30 years old, 6'00", 160 to 180 pounds, wearing a green or gray hooded sweatshirt with the

5

Green Bay Packer symbol on the front, dark pants, and yellow gloves. Subject 3 was identified as a black male, 6'00", 200 pounds, wearing a black winter coat, dark pants, and dark gloves. According to a victim, Subject 3 appeared to be 50 to 60 years old and was armed with a gun during the incident.

17.     One of the victims observed the suspects flee in a black 4-door Cadillac CTS, consistent with the vehicle stolen during a carjacking two days earlier outside of Mount Sinai Hospital.

18.     During a proffer-protected debrief, while under a federal indictment, a cooperating defendant (hereinafter "CD-1") admitted that he committed the George Webb robbery with Otis Hunter and Anthony Lindsey. CD-1 stated that on the evening of the robbery, he was in his room. Lindsey and Hunter came into CD-1's room and Hunter said, "I need you to run up somewhere with me. I got you." CD-1 understood this to mean that Hunter would provide CD-1 with drugs in exchange for CD-1's help in committing a robbery. CD-1, Hunter, and Lindsey entered the stolen black Cadillac. Hunter drove the Cadillac. Lindsay sat in the front passenger seat and CD-1 sat in the back seat. Upon entering the Cadillac, Hunter handed CD-1 a CD case with heroin on it. CD-1 snorted the heroin. Hunter drove to a Walgreen's on 27th and National, where CD-1 shoplifted three pairs of nylon stockings and three pairs of gloves.

19.     Hunter had two guns with him: a .22 caliber revolver and his Desert Eagle handgun. Upon parking at George Webb, Hunter passed the .22 caliber revolver to Lindsey, who then passed it to CD-1. CD-1 identified himself in the surveillance footage as the subject wearing the red sweatshirt who brandished the .22 caliber revolver with white handle. CD-1 stated that all three men wore the nylon stockings over their faces and the gloves CD-1 shoplifted. In the restaurant, Hunter told CD-1 to grab the cash from the register. CD-1 identified Hunter as the subject in the

6

black-hooded jacket who robbed the customer, and Lindsey as the subject in the dark-colored Green Bay Packer sweatshirt.

20.     CD-1 stated that after the robbery, they drove to their common home at S. 15th Place. Hunter gave CD-1 a few dollars and the .22 revolver as payment. Hunter and Lindsey used their robbery proceeds to purchase marijuana. CD-1 sold the .22 revolver for $150 worth of heroin and crack cocaine.

21.     On November 23, 2016, officers found the carjacked black Cadillac in a parking lot across the street from the defendants' common residence on S. 15th Place. The car was missing all four of its tires. In the back seat of the Cadillac, officers recovered a piece of nylon, consistent with that worn by the subjects during the robbery.

22.     On December 4, 2016, at approximately 12:30 p.m., two subjects carjacked a white 2009 Ford Focus, Wisconsin license plate 714XAB, Vehicle Identification Number ("VIN") 1FAHP35N69W230050. The victim was walking back to his vehicle, parked near 1418 West Greenfield Avenue, Milwaukee, Wisconsin. As the victim reached the corner of South 15th Place and West Greenfield Avenue, Subject 1 called out to the victim. Subject 1 continued to approach the victim, and Subject 2 brandished a black handgun and pointed it directly at the victim. Subject 2 instructed the victim to stand still while Subject 1 searched the victim's pockets. The subjects took the victim's Samsung S5 cellular telephone, wallet, four credit cards, and keys to his vehicle. The subjects entered the victim's vehicle and drove south on South 15th Street to West Scott Street.

23.     The victim described Subject 1 as a black male wearing a royal blue jacket/sweatshirt and jeans. The victim described Subject 2 as a black male wearing a black jacket and black pants.

7

24.     On December 4, 2016, at approximately 1:03 p.m., one of the credit cards taken in the above-referenced carjacking was used at the Foot Locker store located at 1135 West Mitchell Street, Milwaukee, Wisconsin. Approximately $937.64 was charged at the Foot Locker to the victim's credit card. Surveillance video of the transaction was reviewed and showed two subjects utilizing the stolen credit card. The Foot Locker employee described Subject 1 as a black male, approximately 19 years old, 5'05" to 5'06", medium build, and having a tattoo of the letters "RIP" in thin capital letters on the back of his left hand, wearing a royal blue baseball cap with the Chicago Cubs red letter C logo on the front, a royal blue sweatshirt, and gray jeans. The Foot Locker employee described Subject 2 as a black male, approximately 19 years old, 6'00", 140 to 150 pounds, with a slight mustache and facial hair, wearing a black hooded pullover sweatshirt, black baseball cap with the Chicago Bulls logo on the front, black pants, and black shoes.

25.     The subjects identified in the Foot Locker surveillance video utilizing the carjacking victim's stolen credit card match descriptions and photographs of D.H. (XX/XX/2001) (Subject 1) and OTIS HUNTER (DOB XX/XX/1993) (Subject 2).

26.     On December 4, 2016, at approximately 2:43 p.m., one of the cards taken in the above-referenced carjacking was used at Goodspot Liquor Store, 2201 West National Avenue, Milwaukee, Wisconsin. According to Goodspot Liquor employees, three black males entered the store and attempted to use the ATM, but could not get the ATM to work. The subjects wanted to buy cigarettes, and employees told the subjects they would have to show identification or provide a PIN if the purchase was over $20. The subjects purchased two packs of cigarettes in one transaction for approximately $17.

27.     Surveillance video from Goodspot Liquor was obtained and reviewed. In the surveillance video, Subject 1 was identified as a black male, shorter than the other subjects, wearing

8

a black hooded jacket with the hood up, over a black baseball cap with a white Nike logo and the word "Nike" above it. Subject 2 was identified as a black male, wearing a royal blue hooded sweatshirt with white draw strings at the collar and matching royal blue pants with black stripes down the side. Subject 3 was identified as a black male, wearing a black hooded jacket with the hood up, tan pants, and tan boots. Subject 2 handed the cashier the stolen credit card to pay for the transaction. Subject 3 showed an identification card, which was required as cigarettes were being purchased.

28.     The subjects identified in the Goodspot Liquor surveillance video utilizing the stolen credit card match the descriptions and photographs of D.H. (DOB XX/XX/2001) (Subject 1), ANTHONY LINDSEY (DOB XX/XX/1998) (Subject 2), and CHARLES LEWIS (DOB XX/XX/1993) (Subject 3).

29.     On December 5, 2016, Milwaukee Police Department Officers Joe Esqueda and Martez Ball observed the white Ford Focus, Wisconsin license plate 714XAB, parked to the rear of 1238 S 15th Place, Milwaukee, Wisconsin. ANTHONY LINDSEY (DOB XX/XX/1998), DESHAWN EVANS (DOB XX/XX/1996) and D.H. (DOB XX/XX/2001) were passengers in the stolen vehicle and subsequently arrested by the Milwaukee Police Department. A black Samsung S5 cellular telephone was recovered from the center console of the vehicle. A black Alcatel flip phone was recovered on LINDSEY's person.

30.     On December 7, 2016, a confidential source (CS) provided a video to the Milwaukee Police Department. The video showed three black males walking down a city street in the daylight, with large snowflakes falling, which is consistent with the weather on the afternoon of December 4, 2016. The individuals in the video were identified as D.H. (DOB XX/XX/2001), wearing a black Nike hat, black Nike sweatshirt, black pants, and Nike shoes; ANTHONY LINDSEY (DOB

9

XX/XX/1998), wearing a blue sweat shirt, blue sweatpants, and tan boots; and CHARLES LEWIS (DOB XX/XX/1993), wearing a black puffy winter jacket, tan pants, and red shoes. The three individuals were walking down the street and talking into the camera. At one point, D.H. flashes three credit cards and proclaims that he used the cards to buy the new clothes he is wearing. At another point in the video, D.H. displayed a key ring with one blue key and a large silver object attached to the ring. The victim of the December 4, 2016 carjacking was shown a still photograph of the keys and identified it as the key ring taken from him during the carjacking.

31.     On December 8, 2016, law enforcement officers showed the carjacking victim two photo line-ups using the folder method, consistent with Milwaukee Police Department procedures. One photo line-up included a photograph of D.H. The carjacking victim identified D.H. as Subject 1, the subject who had first approached him and later went through his pockets while Subject 2 pointed the firearm at him. The other photo line-up included a photograph of HUNTER. The victim identified HUNTER as Subject 2, the gunman, during the carjacking, and the one who fled driving the victim's Ford Focus.

32.     On December 10, 2016, at approximately 3:38 P.M., Perkins Township, Ohio, Police Officers were dispatched to an armed robbery at Wal-Mart, 5500 Milan Road, Sandusky, Ohio. The victim identified the subjects as ASHLEY WICK (DOB XX/XX/1988), and OTIS HUNTER. The victim had met with WICK, HUNTER, and M.M. (a juvenile with DOB XX/XX/2000), approximately three days before the robbery. The victim rented a room for WICK, HUNTER, and M. M., for two nights at the Budget Host Hotel, and one night at the Econolodge Hotel in Sandusky, Ohio. The victim knew WICK and HUNTER were fugitives from Wisconsin, so he agreed to rent the rooms. The victim told officers he was meeting with WICK at the Wal-Mart in order to obtain marijuana and money from her. The victim parked in the Wal-Mart parking

lot and observed WICK exit a U-Haul truck also parked in the Wal-Mart parking lot. WICK entered the victim's vehicle and began asking the victim for cigarettes when HUNTER entered the back seat of the vehicle. HUNTER was armed with a black .380 handgun, and pointed the gun at the back of the victim's head. HUNTER yelled "Give us your shit, I'll kill you." WICK told the victim to give HUNTER all of the victim's stuff, or else "he will kill you." The victim gave WICK and HUNTER all of the money in his wallet, which was approximately $200. WICK and HUNTER exited the victim's vehicle and entered a U-Haul truck where M.M. was sitting. The victim followed the U-Haul truck to a Super 8 Motel, then pulled in to a nearby Toy-R-Us parking lot where police officers made contact with him.

33.     Surveillance video obtained from Wal-Mart shows an SUV driven by the victim park near the U-Haul in the parking lot at approximately 3:30 P.M. A subject exits the passenger side of the U-Haul and enters the victim's SUV at approximately 3:30 P.M. At 3:38 P.M., two subjects exit the passenger side of the victim's SUV and walk to the U-Haul. The U-Haul exits the Wal-Mart parking lot at approximately 3:38 P.M., as the victim's SUV follows.

34.     Shortly after making contact with the victim, Perkins Township Police Officers observed the U-Haul traveling on S.R. 101 towards Castalia, Ohio. The U-Haul stopped at the BP gas station in Castalia, Ohio, where WICK, HUNTER, and M.M. were taken into custody. HUNTER matched the description of the armed subject that entered the victim's vehicle. M.M. matched the description of the subject observed sitting in the U-Haul truck with blonde-tips in his hair. Marijuana and a .380 caliber Sig Sauer handgun with a loaded magazine containing 14 hollow point bullets were recovered from the driver's cab area of the U-Haul.

35.     A cooperating witness (hereinafter "C.W.") contacted Perkins Township Police regarding the above-referenced armed robbery. The C.W. identified WICK, and had seen WICK at

the Econolodge Hotel on December 9, 2016. WICK was staying at the hotel with two black males that the C.W. did not know. According to the C.W., WICK and the two males were waving a gun around and talking about robbing WICK's ex-boyfriend, or anyone else, in an alley or a vehicle. The C.W. also heard WICK or one of the other subjects state that they had IV bags just in case one of them got shot. The C.W. was in the hotel room for approximately ten minutes, but left due to WICK's behavior. The C.W. identified the hotel room occupied by WICK, HUNTER, and M.M., and stated they were driving a U-Haul.

36.     On December 14, 2016, Perkins Township Police Department executed a search warrant on the U-Haul. The following items were located in the U-Haul: several receipts from Footlocker, 1135 West Mitchell Street, Milwaukee, Wisconsin that totaled approximately $1,000; Footlocker shopping bag containing a box of new shoes and new socks; two bags containing medical supplies; identification card for C.K.; several pieces of bedding and towels stolen from the Econolodge; a black Verizon Samsung flip-phone, Model SM-B311V, MEID A0000047635C09; a black, Verizon Samsung Galaxy S5, IMEI 990004809792165; a white, Samsung touch-screen, Model SM-G360T, S/N R28G72GLC2L;  a white, Samsung touch-screen, Model LS740P, S/N 412CYAS0160768; black, TracFone Wireless Alcatel, S/N 014404005069925; and a white Acer laptop, S/N NXMUNAA01653917CFF7600.

37.     Perkins Township Police Detective Joseph Rotuno conducted a firearms trace on the Sig Sauer handgun seized from the driver's cab area of the U-Haul. The identified owner of the firearm was the victim of an armed robbery on December 5, 2016, in Milwaukee, Wisconsin. The Milwaukee Police Department reports reflect that on December 5, 2016, the victim was approached by two black males that fit the age and description of HUNTER and M.M. One of the subjects was armed with a handgun. The subjects knew the victim had a concealed carry weapons permit, and

12

told the victim they knew he had a gun and asked where it was. The victim cooperated and gave his gun to the subjects. The subjects proceeded to search the victim and stole cash, cigarettes, and the victim's CCW permit before fleeing. The make, model, and serial number for the firearm taken during the armed robbery in Milwaukee, Wisconsin are an exact match for the gun recovered by Perkins Township Police Department.

## III.     TECHNICAL TERMS

38.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio,

13

video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

## IV.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39.    Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with forensics tools.

40.    *Forensic evidence.* As further described in Attachment B, this applications seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

14

41.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

42.     *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is a reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.     CONCLUSION

43.     Based upon the foregoing, I believe that probable cause exists to search the Devices, which are more particularly described in Attachment A, and which are currently located at the Federal Bureau of Investigation, Milwaukee Field Office, for evidence of armed robbery.

# ATTACHEMNT A

The following property is to be searched:

    a.  A black Verizon Samsung flip-phone, Model SM-B311V, MEID A0000047635C09;

    b.  A black, Verizon Samsung Galaxy S5, IMEI 990004809792165;

    c.  A white, Samsung touch-screen, Model SM-G360T, S/N R28G72GLC2L;

    d.  A white, Samsung touch-screen, Model LS740P, S/N 412CYAS0160768;

    e.  A black, TracFone Wireless Alcatel, S/N 014404005069925; and

    f.  A white Acer laptop, S/N NXMUNAA01653917CFF7600.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

# **ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 1951 (Hobbs Act robbery); Title 18, United States Code, Section 2119(1) (motor vehicle robbery); and Title 18, United States Code, Section 924(c) (Use of Firearm during Crime of Violence) involving Dominique Rollins, Otis Hunter, Kelly Scott, Deshawn Evans, Anthony Lindsey, or D.H., which was in active memory of the Devices as of January 18, 2017, to include:

      a.  any information related to possession of firearms (including photographs, text messages, emails, or any other communication information);

      b.  any information recording any targets' schedule or travel in November 2016 and December 2016;

      c.  any web search information related to the offenses described above;

      d.  photographs of locations evidencing pre-robbery surveillance;

      e.  any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

      f.  all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.

17